IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

ANNA LEVIN SEGAL,

    Plaintiff,

v.

BROWARD COUNTY d/b/a
GREATER FORT LAUDERDALE
CONVENTION & VISITORS
BUREAU a/k/a GFLCVB,

    Defendant.
_____|

## COMPLAINT

COMES NOW, Plaintiff, ANNA LEVIN SEGAL ("LEVIN SEGAL") files this Complaint and sues Defendant, BROWARD COUNTY BROWARD COUNTY d/b/a GREATER FORT LAUDERDALE CONVENTION & VISITORS BUREAU a/k/a GFLCVB ("BROWARD COUNTY") for retaliation in violation of the family-care provisions of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., ("FMLA") violation of the Pregnancy Discrimination Act, 42 USC §2000, et seq. ("PDA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") and, in support, she alleges as follows:

1

## JURISDICTION & VENUE

1. This is an action brought to remedy unlawful employment practices by the Defendant pursuant to the FMLA, PDA and FCRA.

2. This Court has federal question jurisdiction and supplementary jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1365.

3. LEVIN SEGAL is *sui juris* and is a resident of this District.

4. BROWARD COUNTY is a foreign corporation and employed Plaintiff in this judicial district.

5. LEVIN SEGAL worked for BROWARD COUNTY in Broward County, Florida.

6. All actions relevant to this Complaint occurred in this District.

## CONDITIONS PRECEDENT

7. All conditions precedent have been satisfied or have been waived, including the dual-filing of Charges of Discrimination with the EEOC and FCHR, the elapse of 180 days and receipt of the EEOC's Right to Sue Letter.

## GENERAL ALLEGATIONS

8. BROWARD COUNTY is an "employer" within the meaning of the FMLA, PDA and FCRA.

9. LEVIN SEGAL was an "employee" and an "eligible employee" as defined by the FMLA, PDA and FCRA.

10. LEVIN SEGAL began working for BROWARD COUNTY on or about November of 2013.

11. At all relevant times, LEVIN SEGAL was pregnant.

12. Prior to her notifying BROWARD COUNTY that she was pregnant and would require medical leave under the FMLA, LEVIN SEGAL held the position of Express Meetings Sales Executive and primarily handled corporate sales.

13. As part of her compensation as a Sales Executive, LEVIN SEGAL was eligible to receive a bonus based upon meeting targets.

14. On or about July of 2020, LEVIN SEGAL notified her supervisor, Ed Simon, Executive Vice President, that she was pregnant and would be going on maternity leave on or about October 14, 2020, to care for her newborn child.

15. BROWARD COUNTY approved her for FMLA leave from the period beginning on or about October 14, 2020, to January 19, 2021.

16. At all times, LEVIN SEGAL provided BROWARD COUNTY with documentation certifying her FMLA qualifying leave.

17. Prior to July 28, 2020, Gonzalo Rubio's position was eliminated.

18. On or about July 28, 2020, Mr. Simon told LEVIN SEGAL that a male employee, Gonzalo Rubio, which Mr. Simon called "G-Man", would be taking over LEVIN SEGAL's job duties temporarily while she was on maternity leave and asked her to train him. (hereinafter referred to as, "G-Man").

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

19. During that same conversation, Mr. Simon asked LEVIN SEGAL to assist with film permits which had recently been transferred to the Leisure Sales Department, where G-Man previously worked before she had to train him to temporarily take over her duties while she was on maternity leave.

20. Notably, G-Man was not placed in the film permits department though he had previously worked in the Leisure Sales Department—unlike LEVIN SEGAL.

21. In order for G-Man to assume LEVIN SEGAL's job duties, she provided him with the client list with whom she built relationships, and all of her account information.

22. BROWARD COUNTY moved LEVIN SEGAL under the pretense that she would temporarily "help out" with film permits, since she was going on maternity leave.

23. Though LEVIN SEGAL did not receive a reduction in her pay, the film permits position was less prestigious and more of a menial position than the position of Express Meetings Sales Executive for which she had to train G-Man.

24. This position was previously known as "Film Permit Assistant" and requires merely a high school degree.

25. LEVIN SEGAL earned her Masters of Science in Tourism Studies from FIU's School of Hospitality Management.

26. Further, though LEVIN SEGAL's base salary has remained unchanged, the film permit position is not eligible for a bonus.

27. Since returning from maternity leave on or about January 19, 2021, LEVIN SEGAL has continuously sought a reinstatement to her previously held position of Express Meetings Sales Executive. See Composite Exhibit "A".

28. On April 14, 2021, and April 29, 2021, LEVIN SEGAL, through the undersigned counsel, requested a reinstatement to her prior held position-Express Meetings Sales Executive.

29. Mr. Simon has denied her request—stating that it would be "unfair to displace" G-Man.

30. Rather than comply with the law, BROWARD COUNTY has, instead, allowed G-Man to remain in LEVIN SEGAL's position of Express Meetings Sales Executive and has refused to reinstate her.

31. On the expiration of the EEOC and FCHR 180-day period of investigation, BROWARD COUNTY, through Stacy Ritter, her current supervisor, provided the attached "Meeting Recap", which indicated that LEVIN SEGAL's film permit position was being transferred to another agency and that she was given options to transfer back to a "temporarily reassigned" position in Group Sales or to the position in which she was "originally hired" over eight years ago. See Exhibit "B". The Meeting Recap also gave LEVIN SEGAL a deadline of September 27, 2021, to indicate her "preference for placement".

32. Prior to September 27, 2021, LEVIN SEGAL provided her selection.

5

## ATTORNEY'S FEES

As a result of BROWARD COUNTY's unjust, unlawful, and wrongful treatment of her, LEVIN SEGAL has retained the undersigned law firm and they are entitled to reasonable attorneys' fees and costs.

## COUNT I: INTERFERENCE IN VIOLATION OF THE FMLA

33. LEVIN SEGAL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 32, as though fully set forth herein.

34. LEVIN SEGAL was entitled to FMLA leave under 29 U.S.C. § 2601(a)(1) because, among other things, she had to care for her newborn child.

35. As more specifically alleged herein, LEVIN SEGAL notified BROWARD COUNTY that she required medical leave under the FMLA and that she would return to work.

36. Soon after LEVIN SEGAL notified BROWARD COUNTY of her need for medical leave under the FMLA, BROWARD COUNTY transferred her to the File Permit Clerk position under the guise that she was to "help out" and that the transfer would be temporary.

37. During this period, of time LEVIN SEGAL had to train G-Man to take over her duties and responsibilities as Express Meetings Sales Executive on a purportedly temporary basis while LEVIN SEGAL was out on maternity leave.

38. Upon her return from her medical leave, BROWARD COUNTY refused to reinstate LEVIN SEGAL to her Express Meetings Sales Executive position.

39. As a direct and proximate result of the willful and intentional violations of LEVIN SEGAL's rights under the FMLA by BROWARD COUNTY, LEVIN SEGAL has been injured.  Her injuries include, but are not limited to, injunctive relief, back pay, front pay or reinstatement and liquidated damages.

WHEREFORE, as to Count I, LEVIN SEGAL, demands judgment in her favor against BROWARD COUNTY for violation of the FMLA and seeks damages, including but not limited to back pay, reinstatement or front pay if not reinstated, interest, liquidated damages, attorneys' fees and costs, and such other further relief that this Court deems just and equitable.

## COUNT II: RETALIATION IN VIOLATION OF FMLA

40. LEVIN SEGAL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 32, as though fully set forth herein.

41. LEVIN SEGAL was entitled to FMLA leave to care for her newborn child.

42. As more specifically alleged herein, LEVIN SEGAL engaged in statutorily protected activity when she notified BROWARD COUNTY that she required medical leave and took the FMLA qualifying leave.

43. As more specifically alleged herein, LEVIN SEGAL notified BROWARD COUNTY that she required medical leave under the FMLA and that she would return to work.

44. Soon after LEVIN SEGAL notified BROWARD COUNTY of her need for medical leave under the FMLA, BROWARD COUNTY transferred her to the File Permit Clerk position under the guise that she was to "help out" and that the transfer would be temporary.

45. During this period of time LEVIN SEGAL had to train G-Man to take over her duties and responsibilities as Express Meetings Sales Executive purportedly on a temporary basis while LEVIN SEGAL was on maternity leave.

46. Following the end of her FMLA leave, BROWARD COUNTY refused to reinstate LEVIN SEGAL to her position of Express Meetings Sales Executive and instead, kept G-Man in that position.

47. As a direct and proximate result of the willful and intentional violations of LEVIN SEGAL's rights under the FMLA by BROWARD COUNTY, LEVIN SEGAL has been injured. Her injuries include, but are not limited to, injunctive relief, back pay, front pay or reinstatement and liquidated damages.

WHEREFORE, as to Count II, LEVIN SEGAL, demands judgment in her favor against BROWARD COUNTY for violation of the FMLA and seeks damages, including but not limited to back pay, reinstatement or front pay if not reinstated, interest,

liquidated damages, attorneys' fees and costs, and such other further relief that this Court deems just and equitable.

## COUNT III: DISCRIMINATION IN VIOLATION OF PDA

48. LEVIN SEGAL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 32, as though fully set forth herein.

49. At all relevant times, LEVIN SEGAL was pregnant.

50. Shortly after LEVIN SEGAL notified BROWARD COUNTY she was pregnant, it purportedly "temporarily" demoted LEVIN SEGAL to a demanding, demeaning, and lesser position of a Film Permit Clerk to "help out" since she was going on maternity leave. Indeed, Mr. Simon, LEVIN SEGAL's supervisor, specifically told her that he moved her to the Film Permit Clerk position because she was "pregnant" and "going maternity leave".

51. After purportedly "temporarily" demoting LEVIN SEGAL, BROWARD COUNTY placed G-Man to LEVIN SEGAL's position of Express Meetings Sales Executive and had her train him.

52. When LEVIN SEGAL's returned to work after caring for her child, she sought to be reinstated to her position as Express Meetings Sales Executive.

53. BROWARD COUNTY denied her request for reinstatement.

54. As a direct and proximate result of the intentional violations of the PDA by BROWARD COUNTY, LEVIN SEGAL has been injured. Her injuries include, but are not limited to, back pay, front pay, compensatory damages, and humiliation.

WHEREFORE, as to Count III, ANNA LEVIN SEGAL respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, compensatory damages, interest, attorneys' fees, costs and any other such relief this Court deems just and equitable.

## COUNT IV: DISCRIMINATION IN VIOLATION OF FCRA

55. LEVIN SEGAL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 32, as though fully set forth herein.

56. At all relevant times, LEVIN SEGAL was pregnant.

57. Shortly after LEVIN SEGAL notified BROWARD COUNTY she was pregnant, it purportedly "temporarily" demoted LEVIN SEGAL to a demanding, demeaning, and lesser position of a Film Permit Clerk to "help out" since she was going on maternity leave. Indeed, Mr. Simon, LEVIN SEGAL's supervisor, specifically told her that he moved her to the Film Permit Clerk position because she was pregnant.

58. After purportedly "temporarily" demoting LEVIN SEGAL, BROWARD COUNTY placed G-Man to LEVIN SEGAL's position of Express Meetings Sales Executive and had her train him.

59.     When LEVIN SEGAL's returned to work after caring for her child, she sought to be reinstated to her position as Express Meetings Sales Executive.

60.     BROWARD COUNTY denied her request for reinstatement.

61.     As a direct and proximate result of the intentional violations of the PDA by BROWARD COUNTY, LEVIN SEGAL has been injured.  Her injuries include, but are not limited to, back pay, front pay, compensatory damages, and humiliation.

WHEREFORE, as to Count IV, ANNA LEVIN SEGAL respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, compensatory damages, interest, attorneys' fees, costs and any other such relief this Court deems just and equitable.

### JURY TRIAL DEMAND

Plaintiff, ANNA LEVIN SEGAL, demands a trial by jury on all issues so triable.

Dated:  October 13, 2021                Respectfully submitted,

By:     /s/ *Gina Cadogan*
        GINA MARIE CADOGAN
        Fla. Bar. 177350
        Cadogan Law
        300 S. Pine Island Road, Suite 107
        Plantation, FL 33324
        Telephone: 954.606.5891
        Facsimile: 877.464.7316
        Email: gina@cadoganlaw.com
        Email: kathy@cadoganlaw.com

# EXHIBIT A



**From:** Simon, Ed <ESIMON@broward.org>
**Sent:** Tuesday, January 19, 2021 6:32 PM
**To:** Levin, Anna <alevin@broward.org>
**Subject:** Re: Back from Maternity

Wow, I didn't know you were back.  Perhaps you should talk to me before everyone else? Then it might be more clear.  Let's catch up tomorrow. Thanks and welcome back.

Ed Simon
Executive Vice President
Greater Ft Lauderdale CVB
954-767-2459 (o)
954-261-0188 (c)

> On Jan 19, 2021, at 5:49 PM, Levin, Anna <alevin@broward.org> wrote:
>
> Hi Ed,
> Happy New Year! I'm grateful and excited to be back.  It's been a while since we last spoke (July, I believe?) and I've had some time during maternity leave to reflect.  I was sincerely happy to volunteer during a time of need with department closures, but would like to follow up on my status and if there is a plan/timeline for me? I trained Gonzalo on my position in Express Meetings under the impression he was covering for me during my leave and hit the ground running  learning permits as requested. When we spoke, I thought this was temporary to get

me through maternity leave, but learned from Gonzalo, Tracy, and then Kristen this was permanent and that I was even moving departments. I was relatively still new in my sales role but adapted well and was happy in Express Meetings. I'm all about being a team player but unclear as to why this move happened as it did?

Is doing film permits my permanent position? I did hear at the last TDC meeting that Mayor Steven Geller has a personal interest in Film and would like it under the Economic Impact Department. Do you have an further insight on this? If this does happen, what does my future hold with my education in Hospitality plus 20+ years of experience in Sales & Services?

As you know by now, I'm always happy to help, learn, and become cross trained. I see great value in being proficient in various departments and do believe a team works best when cross trained to be able to cover each other.  I also realize this has been one difficult and turbulent year but if you could please find the time to provide me with some clarity as my career goals are very important.

Thank you,

Anna

**EXHIBIT B**



| | |
|---|---|
| TO: | Anna Levin, Business Development Manager, GFLCVB |
| FROM: | Stacy Ritter, Director of GFLCVB, GFLCVB |
| CC: | Anthony Cordo, Administrative Manager, GFLCVB |
| DATE: | August 30, 2021 |
| RE: | Meeting Recap |

Per the meeting on August 30, 2021 you were notified of the following:

- Film permitting will be transferring from the GFLCVB agency and going to the OESBD agency between October and December of 2021.

- When the transfer of film permitting duties occurs, it will no longer be necessary for you to do the temporary film work.

- You were given the option:
    - Group Sales section – a return to small meetings group sales from which you were temporarily reassigned. You would be reporting to Michael Pouey, VP of Group Sales, currently leading this team.
    - Convention Services section – to which you were originally hired. You would be reporting to Tobie Hollenbeck, GFLCVB Manager (Destination Services), currently leading this team.
- You were given until September 27, 2021, to provide, in writing, your preference for placement.

- If interested, you can apply for any of the film positions that become available. These postings will be available via the career pages on BC-Net or Broward.org.